```
UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK                    FOR PUBLICATION
----------------------------------------------------------------
In re
        CHRISTINE M. FALBO
                                                Case No.  15-10504 K

                        Debtor
----------------------------------------------------------------
```

OPINION AND ORDER

The matter before the Court involves only a few hundred dollars, but has caused this Chapter 13 Debtor much emotional distress (according to her counsel) because it began with a claim for $116,892.84, a claim that came from "out of the blue".

Back in December of 2012, the Debtor's father died while owning a home in Hilton, New York.  (The Debtor did not reside there.)  The home secured a mortgage owed to Wilmington Savings Funds Society, FSB.  In March of 2015, the Debtor filed her Chapter 13 petition.  She did not schedule any legal or beneficial interest in her father's home nor did she schedule any obligation owed to Wilmington.  This is because she did not own or inherit the property, and was not an obligor on the mortgage note.  Nonetheless, Wilmington's counsel, Peter T. Roach & Associates, PC, asserted a secured claim in the amount of $116,892.84, on June 8, 2016.  The Chapter 13 Trustee notified the Debtor and her counsel of that claim.  Payment of that claim (as a secured claim) would vastly have extended the Debtor's obligation to make monthly payments.

Instead of calling her own counsel, the Debtor called the Roach Law Firm to explain that her father left the property to his grandchildren, not to her, pursuant to a last will and testament that was in probate, and that she had no interest in the property whatsoever.

She has stated later in open court here that she was called a "liar," and so she felt she had to retain counsel to take formal steps to have the claim disallowed[1], and she did so. He began the process of objecting to the claim.

Michael Manniello, an attorney with the Roach Firm (in his Affirmation in Support of Motion to Allow Claims, dated July 6, 2016) stated, "On June 28, 2016, Debtor Christine M. Falbo filed an Objection to Wilmington's Claim on the basis that she is 'not the party responsible for said debt.'" He went on to say that the Debtor's father "passed away leaving his estate to [Debtor] Christine M. Falbo by virtue of his Last Will & Testament. . . . Upon information and belief the Will has not been probated. If the Will has been probated then there is no issue that the Debtor is now the fee owner of the Premises encumbered by Wilmington's mortgage lien and if Debtor wishes to maintain her interest in the Premises then Wilmington's claim must be paid."

That statement is entirely incorrect. Possibly it was knowingly false. Mr. Manniello had the Will & Testament and he appended it to his Affirmation. It clearly left the Hilton New York property to Scott A. Falbo and Heather A. Pike (apparently, grandchildren of the Debtor's father.) Only the residuary was left to the Debtor (and also to three of her siblings in equal shares). He also appended a copy of a state court order admitting the will to probate. Nonetheless, Mr. Manniello went on to say "if the Will was not probated then

---

[1] Her Chapter 13 Plan obviously had not provided for the Wilmington claim. Her Plan was confirmed on May 15, 2015, and Roach filed the Wilmington claim on June 8, 2016, a late claim. (Late-filed claims are almost always unopposed by a debtor who seeks to retain real property that secures the late-filed claim. Indeed, Chapter 13 debtors' counsel in this Court know how useful it is to use Rule 3004 to file mortgage arrearage claims against their own clients, and on behalf of the mortgage creditors, so that their clients can be "current" at the end of the case – all arrears paid at the *Till* rate of interest, and all post-petition payments kept current (or as otherwise agreed.))

Debtor nevertheless maintains an interest in the Premises by reason of being an heir at law, -- if Debtor wishes to maintain her interest in the Premises then Wilmington's claim must be paid. . . . if Debtor does not wish to maintain any interest in the Premises she may abandon same and the issue of her objection to the claim will be resolved."

Nineteen days after Mr. Manniello filed that submission, he filed a Motion to Lift Stay without ever calling the attorney who was filing the claim objection on behalf of the Debtor, and ignoring the fact that the Debtor had called Mr. Manniello's office to let him know that she desired no interest in the property and had no obligation on the debt.

His Motion to Lift Stay came before the Court on August 9, 2016 and he appeared through local counsel. The Debtor appeared personally along with her bankruptcy counsel. In theory, the Debtor and her counsel could have ignored the motion to lift stay (because she claimed no interest in the property) except for the fact that the proposed order included with the Motion to Lift Stay was grossly inappropriate. It stated "ORDERED, that Wilmington may increase the mortgage indebtedness by the sum of $650 for the fees and $176 for the cost associated with bringing this motion; and it is further ... ORDERED, all communications sent by Secured Creditor in connection with proceeding against the property including, but not limited to, notices required by state law and communications to offer and provide information with regard to a potential Forbearance Agreement, Loan Modification, Refinance Agreement, Loss Mitigation Agreement, or other Loan Workout, may be sent directly to Debtors."[2]

---

[2] These paragraphs would prejudice the rights of the grandchildren (who are not parties here).

Because of procedural defects in Debtor's counsel's efforts to object to the Claim, the Claim Objection was not before the Court that day. Nonetheless, the Court disallowed Wilmington's claim because the Debtor, in open Court, disavowed any interest in the property. The Court also granted Wilmington's Motion for Lift of Stay, but only to the extent that the Order that it sought was not inappropriate. (The Court entered its own version of an Order Lifting Stay, the next day.)

Also in open Court on August 9, 2016, the Debtor's counsel requested attorney's fees in the amount of $700.00 for having to file an objection to the Wilmington claim and having to appear in Court in opposition to the portions of the lift-stay Order that Wilmington proposed in connection with its Motion to Lift Stay. He said that he would "settle' for $700.00. The Court directed local counsel to direct Mr. Manniello to call Debtor's counsel, Mr. Scura. And the Court continued the hearing to September 13, 2016 "for tracking as to Debtor's attorney's fees and costs." It was surprising to the Court that in fact the matter came before it again on September 13, 2016. Instead of calling Mr. Scura to settle the amount of attorney's fees, Mr. Manniello filed (on September 8, 2016), a Motion to Reconsider the Court's August 9th rulings and August 10th Order. That motion contained <u>102 pages</u> of affirmations and exhibits. <u>Mr. Manniello decided to fight the possible award of a few hundred dollars to the Debtor's attorney over a matter concerning a Proof of Claim that Mr. Manniello should simply have withdrawn</u>.

According to Mr. Scura, Mr. Manniello never called him. Rather Mr. Scurra called Mr. Manniello and Mr. Manniello felt assured that Mr. Scura and this Court were incorrect under the law. All of this came back before the Court on October 11, 2016. Mr. Scura again appeared on behalf of the Debtor. Again, the Roach Firm appeared only through local counsel.

Because the Roach Firm misrepresented the contents of its own exhibits, it is welcome to practice here from now on only if Mr. Roach signs the submissions.

The Motion to Reargue is granted. But the result is the same. The Court's Order Lifting Stay is in effect and is final.

For the reasons set forth by Mr. Scura in open court on October 11th, by which he sought $1200.00 in addition to the $700.00 for which he was willing to "settle" during a prior appearance, Wilmington or its counsel is ordered to pay $1900.00 to Mr. Scura as Attorney for the Debtor, no later than 12 days from the date of this Order. <u>Additionally, Mr. Manniello shall write a letter of apology to the Debtor, with a copy to Mr. Scura, within ten days</u>.

These rulings are made pursuant to the Supreme Court case of *Chambers v. NASCO, Inc., 501 U.S. 32 (1991)*, because this Court finds that there has been "vexacious litigation conduct" in connection with this otherwise humble case. (The Court had granted lift of stay, disallowed the claim, and directed Mr. Manniello to call Mr. Scura to "settle" Mr.

Scura's request for $700 in attorney's fees.  Instead of obeying the Court, he filed 102 pages seeking "reconsideration" of a ruling in favor <u>of his own client</u> (the lift of stay).)

       SO ORDERED

Dated:     Buffalo, New York
             November 7, 2016

                                                        s/Michael J. Kaplan
                                                                U.S.B.J.